UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
DEMETRIUS DWAYNE MILES, : CASE NO. 1:14-CV-01648
:
Plaintiff, :
:
vs. : OPINION & ORDER
: [Resolving Doc. No. 1]
RICHLAND CORRECTIONAL :
INSTITUTION, *et al.*, :
:
Defendants. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

*Pro se* Plaintiff Demetrius Dwayne Miles filed this civil rights action under 42 U.S.C. § 1983 against the Richland Correctional Institution, the Ohio Department of Rehabilitation and Correction ("ODRC"), and "Officers, Administrative Staff, and Correctional Officers of the Richland Correctional Institution." (Doc. No. 1 at 1). In the Complaint, Plaintiff claims the Defendants are corporations that breached their contract with him by subjecting him to conditions of confinement he considers to be unreasonable. Specifically, he alleges the Defendants placed restrictions on his religious practices, threatened him with pepper spray, and paid court costs from his prisoner trust account without his authorization. In addition to breach of contract, he asserts claims for breach of fiduciary duty, violations of his First, Eighth and Fourteenth Amendment rights under 42 U.S.C. § 1983, the Fair Debt Collection Practices Act ("FDCPA"), the civil Racketeer Influenced Corrupt Organizations Act ("RICO"), and Title VII,

42 U.S.C. § 2000e. He seeks monetary damages, and release from prison.

Plaintiff indicates he was recently released from prison. He filed a Motion to Proceed *In Forma Pauperis*. (Doc. No. 2). That Motion is granted.

## I. Background

Plaintiff's Complaint is composed, in part, of meaningless legal rhetoric. He attempts to equate the ODRC and the Richland Correctional Institution with corporations subject to the Uniform Commercial Code ("UCC"). He states that the policies and regulations of the ODRC became contractual obligations when the state accepted payments from the federal government in the form of Federal Reserve notes. He further asserts that when staff members are paid by the ODRC, they also become bound by the UCC and the contract. He claims he is a bond instrument from which the ODRC has drawn value as a trustee. He also states he is a warehouse good, subjecting the ODRC to "Warehouse Man's Liability." (Doc. No. 1 at 4). He indicates that the Richland Correctional Institution has a contractual obligation with the State of Ohio to ensure the safety and constitutional rights of the inmates through policies and rules. He concludes that all of the Defendants have breached their contracts with him.

Plaintiff lists seven ways in which the Defendants breached a contract with him. First, he contends he was denied a feast on the Muslim holiday of Eid-Ul-Adha. He states that prior to 2013, the prison's food contractor provided Muslim inmates with "a feast ...as good as can be expected in a prison." (Doc. No. 1 at 6). He contends the Richland Correctional Institution changed food service providers in 2013, and the new provider served a meal on the holiday that was not up the standards of a feast.

Second, Plaintiff asserts he is not permitted to wear his handmade kufi. Prison regulations permit Muslim inmates to wear kufis but dictate that they must be white or beige in color and must be purchased by an approved vendor. He contends inmates "are put in a 'tight' financial spot in prison" and find creative ways to provide for themselves. He indicates Christians make homemade crosses and Jewish inmates make yarmulkas. He admits all these items are considered contraband but prison staff in the past did not enforce the regulation. The Deputy Warden and the Chaplain, however, do enforce the regulation. He contends he was taken to segregation for refusing to remove his homemade kufi.

Third, Plaintiff complains Muslim's are denied regular congregational prayer in the Richland Correctional Institution. He claims inmates attending Narcotics Anonymous and Alcoholics Anonymous are permitted to pray as a group. He indicates his request for congregational Muslim prayer five times per day was denied, although he concedes they were permitted group prayer five times per day during Ramadan.

Fourth, Plaintiff alleges he was provided with Kosher meals but not Halal meals. He admits that Kosher meals are acceptable substitutions for Halal meals, but claims he had to obtain a letter from his Imam verifying that he is a Muslim before he could receive Kosher meals. He contends Jewish inmates were not required to provide proof of religious affiliation.

Fifth, Plaintiff asserts he verbally confronted a corrections officer regarding her treatment of inmates. During the confrontation, he alleges she took out her can of pepper spray, shook it up, and told him to "keep it up" implying that she would spray him with pepper spray. He contends chemical agents are to be used only for crowd control or to subdue acts of aggression.

Sixth, Plaintiff asserts employees at the Richland Correctional Institution would not let him use the restroom during the inmate count because he would have to leave his cell to do so. He alleges the inmates in higher security cells and those in segregation have restroom facilities in their cells and can use them at anytime, including during the count. Other inmates in the general population must wait until the count is over and movement is permitted again to use the restroom.

Finally, Plaintiff alleges that the prison cashiers permit fraudulent payments to be made from his prisoner account for court costs. Although he contested the withdrawals, he did not receive a refund.

In addition to his breach of contract and civil rights claims, Plaintiff asserts violations of the FDCPA, civil RICO, and Title VII. He contends the cashiers engaged in unfair debt collection practices when they took money from his account to pay his court costs. He also indicates the Defendants have engaged in mail and wire fraud. He contends he mailed grievances and did not receive a reply. Plaintiff concludes with an attempt to construe himself as a trust, and attempts to appoint a federal judge and the Ohio Attorney General as his trustees. He demands these trustees remove any liens against the "trust" within seven days or be assessed damages in the amount of "$75,000.00 per hour." (Doc. No. 1 at 11).

## II. Legal Standard

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a

claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Twombly*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

### III. Analysis

As an initial matter, none of the Defendants is subject to suit in a civil rights action under 42 U.S.C. § 1983. Despite Plaintiff's creative attempt to characterize the Defendants as corporate entities, the fact remains that the Defendants are a state agency, a prison owned and operated by a state agency, and all of the employees, officers and administrative staff of a state

prison. The Eleventh Amendment is an absolute bar to the imposition of liability upon a state, its agencies, and its employees sued in their official capacities. *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005). The ODRC clearly is a state agency and entitled to Eleventh Amendment immunity. The Richland Correctional Institution is a prison facility owned and operated by the ODRC, and is not a legal entity capable of being sued. *See e.g. Brown v. Imboden*, 2011 WL 3704952 at * 2 (N.D.Ohio Aug.23, 2011) (finding that Mansfield Correctional Institution is not *sui juris* and, therefore, not capable of being sued under § 1983); *Watson v. Gill*, 2002 WL 1396900 at *1 (6th Cir. June 26, 2002) (finding that county jail is not a legal entity susceptible to suit under § 1983). The claims against the Richland Correctional Institution are construed against the ODRC, which is immune from damages under the Eleventh Amendment.

Plaintiff's claims against all of the "Officers, Administrative Staff, and Correctional Officers of Richland Correctional Institution" can only be construed against these Defendants in their official capacities, entitling them to Eleventh Amendment immunity. Plaintiff cannot establish the liability of any Defendant absent a showing that the individual Defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). A blanket statement of alleged liability against all employees of the Richland Correctional Institution is not specific enough to impose individual liability on any particular staff member. The only construction possible for these claims is that they are asserted against the employees of the Richland Correctional Institution in their official

capacities. A claim against a public servant in his official capacity imposes liability on the government entity he represents. *Brandon v. Holt*, 469 U.S. 464, 471 (1985). Because they are employed by the ODRC, they are entitled to Eleventh Amendment immunity.

In addition to his civil rights claims, Plaintiff asserts claim against the prison cashiers for violation of the FDCPA. The FDCPA governs the conduct of debt collectors. The statute specifically excludes from the definition of a debt collector "any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties." 15 U.S.C. § 1692a(6)(C). The Richland Correctional Institution cashiers are employees of the State of Ohio and paying court costs from prison trust accounts is an official duty assigned to them. They are not debt collectors as defined by the statute and the FDCPA does not apply to them.

Similarly, Plaintiff fails to state a claim for civil RICO violations. Pursuant to 18 U.S.C. § 1964(c), RICO provides a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." In turn, Section 1962 states in relevant part:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

First, Plaintiff fails adequately to demonstrate that a "person" employed by or associated with an "enterprise" conducted unlawful activities prohibited by RICO. Under the "non-identity" or "distinctness" requirement of RICO, an entity may not be liable under § 1962(c) for

participating in the affairs of an enterprise that consists only of its own subdivisions, agents, or members. An organization cannot join with its own members to undertake regular business activities and thereby become an enterprise distinct from itself. *See Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 781 (6th Cir. 2000)(citing *United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190 (4th Cir. 1982)). In other words, the Defendant cannot be both the "enterprise" and the "person" conducting or participating in the affairs of that enterprise. See *Id.; Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1489 (6th Cir. 1989). In this case, the Defendants are the ODRC, a prison owned by the ODRC, and generally all of the people employed by the ODRC to work at the prison, sued in their official capacities. The ODRC is both the "person" and the "enterprise" in Plaintiff's RICO claim.

Furthermore, a "pattern of racketeering activity" requires at least two acts of "racketeering activity" which are set forth in Section 1961(1). Plaintiff asserts the Defendants engaged in mail fraud and wire fraud. In support of this claim, he states:

> [T]he Defendants defraud multiple inmates by stating they had no claim or that the claim is someone else's to address. The destroying of complaints, ignoring complaints, not issuing out grievances, by delaying or hindering the process. I have wrote a couple of grievances hand written using inmate free letters and regular stamped envelope which I never received a reply from.

Mail fraud is defined under 18 U.S.C. § 1341 and requires that the Defendant devise a scheme to defraud, or obtain money or property by means of false or fraudulent pretenses and use the mail system to execute this scheme. Wire fraud is defined by 18 U.S.C. § 1343 and proscribes conduct substantially similar to the conduct prohibited under § 1341, except that wire fraud requires use of a wire transfer, not the mail, to carry out the scheme. Plaintiff's description of the

-8-

Defendant's conduct does not meet either of these statutory definitions. Plaintiff does not allege facts to suggest the Defendants engaged in a pattern of racketeering activity.

Plaintiff further fails to demonstrate the Defendants engaged in the collection of an unlawful debt. Under RICO, "unlawful debt" pertains to illegal gambling debt or debt unenforceable because of usury laws. 18 U.S.C. § 1961(6). Plaintiff contends the Defendants are collecting court costs. This is not an "unlawful debt" as defined by the RICO statute.

Plaintiff also indicates on the first page of his Complaint that he is asserting claims under Title VII. He does not refer to this claim in his Complaint and does not provide facts to suggest he may have a viable claim under Title VII. In fact, Title VII prohibits discrimination in the context of employment. Plaintiff is not an employee of the ODRC. This statute is not applicable to the facts alleged in this Complaint.

Finally, it appears Plaintiff may be seeking relief from his conviction and release from prison. Plaintiff declares himself to be a "trust" and demands that the Ohio Attorney General and the Federal Court, acting as his self-appointed trustees, release any liens against "the trust." Much of Plaintiff's rambling legal jargon is incomprehensible and legally meaningless. It is possible that the "liens" to which Plaintiff refers are his conviction and current incarceration. To the extent Plaintiff is requesting relief from his conviction or release from prison, the request is denied. To challenge his continued confinement, his sole remedy is habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

### IV. Conclusion

Accordingly, Plaintiff's Motion to Proceed *In Forma Pauperis* (Doc. No. 2) is granted

and this action is dismissed without prejudice under 28 U.S.C. § 1915(e).  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[1]

      IT IS SO ORDERED.

Dated: January 27, 2015                       *s/       James S. Gwin*
                                                JAMES S. GWIN
                                                UNITED STATES DISTRICT JUDGE

---

[1]    28 U.S.C. § 1915(a)(3) provides:

        An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.